UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MAX MARTINEZ,

         Plaintiffs,

  -against-

TOWN OF HEMPSTEAD

         Defendants.
------------------------------------------------------------X

Index No.:

**COMPLAINT**

***Jury Trial Demanded***

  Plaintiff MAX MARTINEZ, by and through his attorneys, RAISER & KENNIFF, respectfully alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331 & 1343.

2. Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff MAX MARTINEZ ("Martinez") is a resident and domiciliary of Nassau County, New York. At all times relevant to this complaint, Plaintiff was an "employee" of Defendant Town of Hempstead and the Defendant Sanitation Department. Plaintiff is still employed by the Defendant Town of Hempstead.

4. Defendant TOWN OF HEMPSTEAD (hereinafter the "Town") at all relevant times, was and still is a municipal corporation duly formed pursuant to the laws of the State of New York, with its principal place of business at One Washington

1

Street, Hempstead, New York 11550. At all times relevant to this complaint, Defendant was Plaintiff's employer.

## FACTUAL ALLEGATIONS

### *Background*

5. Plaintiff commenced employment with the Defendants in 2002 as a Grade 12 Driver, also classified as a Recycling Worker I. Plaintiff continued as a Grade 12 Driver until 2007, when Plaintiff lost his license as a result of a DUI.

6. Subsequently, Plaintiff was demoted from the position of a Grade 12 Driver to a Grade 10 Helper, also classified as a Recycling Worker I. In 2007, two of Plaintiff's co-workers, Michael Acerra and Patrick McNamarra, whom were both Grade 12 Drivers, also lost their licenses as a result of DUIs. However, Michael Acerra and Patrick McNamarra did not receive demotions to Grade 10 Helpers, even though they were no longer permitted to conduct the duties of a Grade 12 Driver, as a result of having lost their licenses. Upon information and belief, Michael Acerra and Patrick McNamarra are Republican Club members across the Town of Hempstead. Furthermore, upon information and belief, both men were allowed to keep their positions because they paid kickbacks to Thomas Metzger, the Superintendent of Sanitation.

7. Plaintiff's license was reinstated in 2008. Upon the reinstatement of Plaintiff's license, Plaintiff asked his supervisor, Thomas "Tommy" Metzger, about being appointed back to a Grade 12 Driver position. Metzger informed Plaintiff that he needed to fill out paperwork at Town Hall during the 2009 hiring period to be reinstated to the Grade 12 Driver position.

8. Additionally, in 2008, after Plaintiff had spoken with Metzger, Plaintiff was asked by his supervisors to drive a sanitation truck on numerous occasions, despite being classified and compensated as a Grade 10 Helper. Plaintiff respectfully denied the requests of his supervisors stating that he did not want to operate outside of his classification to jeopardize his chances of reinstatement to a Grade 12 Driver position.

9. In 2009, Plaintiff was contacted by Metzger to go down to Town Hall and fill out the necessary paperwork for reappointment to the Grade 12 Driver position. Following filling out the necessary paperwork, Plaintiff returned to the duties as a Driver, as he was assigned a route that he maintained for several years.

10. In December 2014, Plaintiff noticed a discrepancy in his pay check, and consulted with Metzger regarding the error. Upon meeting with Thomas Metzger, Plaintiff was informed that in the record keeping system, Plaintiff was classified as a Grade 10 Helper still, and that Plaintiff should speak with his union and also put in reapplication for the Grade 12 Driver position that he has been performing as from 2009 through 2014.Plaintiff was the only driver at the Sanitation Department who was compensated as a Grade 10 Helper rather than a Grade 12 Driver, as per the collective bargaining agreement.

11. Following Plaintiff's meeting with Thomas Metzger, Plaintiff filled out all the necessary paperwork for reappointment to a position as a Grade 12 Driver and also consulted with his union about the reinstatement as well as compensation for the back pay owed to him from 2009 through 2014. Plaintiff's union had

informed him that they had reached out to William Salmon, head of human resources, and were informed that Plaintiff would not be receiving any back pay, and that any attempt by Plaintiff to grieve the denial would be futile. Plaintiff also requested reimbursement for red light camera tickets as per normal town protocol but was told by Thomas Metzger to "see the union". Furthermore, Plaintiff was repeatedly told that the reason he was not being promoted or being restored was because he didn't pay Thomas Metzger any money, and that the only way to get ahead was to pay Thomas Metzger.

12. Subsequently, in Janaury 2015, Plaintiff received an unsigned denial letter regarding his filing for reinstatement to a Grade 12 Driver. As the letter was unsigned, Plaintiff is not presently aware of exactly who denied Plaintiff's application. Plaintiff did not receive such a denial letter in 2009 when he filled out the necessary paperwork for the appointment to the Grade 12 Driver position.

13. In late 2015, Plaintiff again inquired about the reinstatement to his Grade 12 Driver position but was informed by Thomas Metzger that title changes would not be made for employees with criminal records while then Town of Hempstead Supervisor, Kate Murray, was engaged in a campaign for Nassau County District Attorney. Since Kate Murray lost the election for Nassau County District Attorney, Plaintiff has continued to seek his reinstatement to a Grade 12 Driver but was continuously denied until January of 2017. In January 2017 Plaintiff got returned to the Grade 12 Driver position, but he was told that if he ever wanted a promotion again, he would have to be demoted. Furthermore, despite the title change, Plaintiff was still forced to work on the back of the truck yet other people

such as Mark Gracie, Brett Biuso, Jeremy Kaplan, and others who were politically connected were given driving positions and other favorable assignments, not due to their seniority but due to their political connections, payments made to Metzger, as well as neopotism.

14. Plaintiff has previously applied to take the test to become a supervisor. However, Plaintiff's application was denied on the basis that he is not a resident of the Town of Hempstead. This denial is improper as there is no legal requirement that Plaintiff reside in the Town of Hempstead in order to become a supervisor with the Sanitation Department. Upon information and belief, other supervisors reside outside of the Town but were allowed to hold supervisory positions due to their status with various Town Republican clubs.

15. Recently, Plaintiff requested to be considered for and trained for a spot driving a dumpster truck on January 16, 2018. On January 17, 2018, Henry Metzger, another supervisor at the Sanitation Department, returned Plaintiff's paperwork to him and told him that he "can't apply for that position" because he had never was trained. When Plaintiff pointed out that other employees with less seniority than he but more politically connected, such as Jeremy Kaplan and Brett Biuso, were trained for and then allowed to drive the dumpster trucks, Henry Metzger had no reason as to why Plaintiff couldn't be trained as well.

16. On January 18, 2018, Plaintiff noticed a flyer encouraging employees to apply for the dumpster driver positions. He approached his union representative Robert Bogaki and explained what happened the two days prior. Bogaki encouraged Plaintiff to apply for the dumpster driver route so he did.

5

17. On February 13, 2018, Plaintiff returned from his route and was advised by a supervisor named John Deluca that he was being assigned a dumpster driver route. When Plaintiff told Deluca that he had not been trained for the position, Deluca told Plaintiff that the position was "take it or leave it." Plaintiff reluctantly accepted the position and was told to speak to Brian Pidhearney, another supervisor, about the position. When he spoke to Pidhearney, Pidhearney tried to discourage Plaintiff from taking the job. After this, Plaintiff met with Henry Metzger, Pidhearney, and Deluca about the job. The three supervisors advised him that he wouldn't be trained for the position, despite the fact that they had trained other employees to handle the job.

18. Plaintiff left and reached out to Union Representative Bogaki about the lack of training. When he arrived the next day, Plaintiff was advised by Henry Metzger that he was not working on a dumpster route. When he questioned why, Henry Metzger at first tried to claim that Plaintiff had rejected the job. When Plaintiff pointed out that he accepted the job but that he wanted training on how to use the truck, Metzger again claimed that Plaintiff had rejected the position and asked Plaintiff to come into the office. After retrieving his union representative, Bogaki, he entered the office to find out that Brett Biuso had been given the route. When Plaintiff pointed out that it would take him a while to learn how to use the truck without training, Deluca told him that they wouldn't pay overtime if it took him a longer time to learn the truck.

19. Plaintiff discussed his concerns to Supervisor James Gibbia that he was worried that someone could get seriously injured unless the town trained him like they did

everyone else. Gibbia yelled at Plaintiff then told him to not take the route, saying that they were aware of similar incidents happening in the past. Plaintiff then advised Bogaki that he was leaving. Brett continued to drivethe dumpster route. The next day Plaintiff learned that Henry Metzger had gone to the Commissioner of Sanitation and convinced the Commissioner to deny Plaintiff the dumpster route.

20. The town's discriminatory behavior continues to this day. by way of example Plaintiff was hired on the same day as Leonard J. Disalvo. Despite having the same seniority and job duties, Disalvo makes significantly more money than Plaintiff. Upon information and belief, this is due to Disalvo's close friendship with Thomas Metzger and his Republican Club membership.

21. To date Plaintiff continues to be passed over for promotions and advancement in favor of more politically connected employees. Most recently Plaintiff saw a posting for a position in the safety department. Plaintiff went to apply for this position but was told the position had expired despite Plaintiff applying for the job the same day it was posted. Plaintiff later learned that employees with less seniority but more political connections received the position Plaintiff has applied for.

22. Plaintiff has also repeatedly been turned down for regular driving routes. Whenever he would apply for said routes, he routinely would learn that the routes have gone to more connected employees. Similarly, Plaintiff finally got trained to drive the dumpster truck after complaining that Defendants never posted applications to train employees but has still been turned down for a regular route.

AS AND FOR A FIRST CAUSE OF ACTION
(First Amendment Retaliation - Assembly)

23. By reason of the foregoing, the Defendant has unlawfully retaliated against the Plaintiff and deprived him of his rights guaranteed by the Constitution of the United States, by depriving him of his liberty and property interests due to his constitutionally protected activities in free assembly as part of a labor union, pursuant to the First Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

DEFENDANT'S LIABILITY

24. Defendants, while acting under the color of law, deprived the Plaintiff of all the above mentioned constitutional rights in that Defendant intentionally committed, condoned or was deliberately indifferent to the aforementioned violations of the Plaintiff's rights.  Such deliberate indifference may be inferred in the following ways:

    a. Defendant's custom or practice of depriving the Plaintiff of the aforementioned constitutional rights.  These practices were so persistent and wide spread that they constitute the constructive acquiescence of policy makers;

    b. Inadequate training/supervision was likely to result in such violations that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision; and

    c. Policymakers engaged in and/or tacitly condoned the deprivations.

WHEREFORE, the Plaintiff demands judgment against Defendant for all compensatory, emotional, and psychological damages, injunctive relief, and any other

damages permitted by law pursuant to the above referenced causes of action in an amount to be determined by a jury. It is respectfully requested that the Court grant the Plaintiff any other relief to which the Plaintiff is entitled, including but not limited to:

a. Awarding reasonable attorney's fees and costs and disbursements of this action;

b. Granting all other and further relief, equitable or otherwise, to which Plaintiff is entitled and/or which to the Court seems just and proper.

Further, Plaintiff demands a trial by jury.

Dated: Garden City, New York
       July 16, 2019                                Respectfully submitted,

                                                    RAISER & KENNIFF
                                                    *Attorneys for Plaintiff Max Martinez*

                        By:    *Jonathan Tand*
                               Jonathan A. Tand (JT-1548)
                               300 Old Country Road Suite 351
                               Mineola, New York 11501